### PUBLICATION OF COUNTY COMMISSIONERS' REPORT.

Circuit Court of Wood County.

STATE, EX REL THE SENTINEL COMPANY, v. COMMISSIONERS WOOD COUNTY.*

Decided, October 28, 1910.

*Publication—Necessity of, in Case of Financial Report of County Commissioners—Competency of Newspaper May Be Determined in an Injunction Proceeding.*

1. Injunction lies to determine the competency of a newspaper to publish the financial report of the county commissioners, required under Section 2508, General Code.
2. Necessity for the publication of such a report is not determined by the comparative amount of money involved in the report or by the cost of its publication.
3. A newspaper having a circulation of eight hundred in a county containing a population of fifty thousand distributed over twenty townships, and in fifteen of those townships containing a population of thirty-five thousand a circulation of only thirty-six, is a newspaper of general circulation within the meaning of the statute providing for the publication.

*N. R. Harrington, McClelland & Bowman,* for plaintiffs.
*B. F. James* and *William Dunipace,* contra.

---

* Affirmed without opinion, 84 Ohio State, 447.

KINKADE, J. (orally) ; WILDMAN, J., concurs; PARKER, J., dissents in a separate opinion.

Appeal from common pleas court.

In the court below this was an action brought by the Sentinel Company, as a tax-payer of Wood county, after the statutory requirement (General Code, 2922) for requesting the prosecuting attorney of the county to bring the action had been complied with, to restrain the county commissioners and the county auditor from entering into a contract under General Code, 2508, to print the county commissioner's report in a paper known as the *Weekly Beacon,* published at North Baltimore.

The ground for the injunction set up in the petition is that the *Weekly Beacon* is not a paper of general circulation in Wood county.   That is the only ground set up in the petition for this injunction, and it is said that because it is not a paper of general circulation in Wood county, that, therefore, the county commissioners and county auditor are unauthorized (as of course they would be if that is so) in making a contract with Mr. Wilkinson, the proprietor of the *Weekly Beacon,* to publish this report in that paper.

The position taken by the Sentinel Company is denied by Mr. Wilkinson. · In the court of common pleas a temporary injunction was granted restraining the completion of the contract.   A motion was made to dissolve that injunction, the motion overruled and the injunction continued in force until the final hearing in the court of common pleas, and it is stated by counsel, but not shown in the papers here though undoubtedly a fact, that the case passed on to final hearing in the court of common pleas and the injunction was made perpetual.

An appeal was taken to this court from the order of the court of common pleas refusing to dissolve the temporary injunction, and the question presented here is on a motion to dissolve this injunction, and the case is also on its merits here.

Several grounds are presented by the defendants raising questions of procedure in this case.   It is said that the only proceeding that could be brought would be one in mandamus.

It is not admitted that such action may have been brought and maintained, neither is it contended by defendant that it

could have been maintained at all, but it is said that if the matter could have been interfered with in any way, it must have been by mandamus, not by injunction. We think that is not the case. We are unanimously of the opinion that the proceedings were correct in form. We call attention to the case of *Schloenbach* v. *State,* 53 Ohio St., 345. The opinion of the court, found on page 346, recognizes the correctness of the practice pursued in this case, and if any authority was necessary to show the correctness of the procedure here we think this particular decision of the Supreme Court covers that question.

We see no question in this case we have in controversy at all except the question as to whether the evidence in this case shows that the *Weekly Beacon* published at North Baltimore at the time this contract was attempted to be entered into, was a paper of general circulation in Wood county as provided by statute— a question of fact, which the court of common pleas held that it was not, the paper having, as shown by the evidence, some eight or nine hundred of circulation, going to many of the townships in Wood county in small numbers, it is true, and no affirmative showing that it went to five of these townships of the county— that papers went to these townships and may have been delivered in the townships we think the record fairly shows, but it is not shown affirmatively in the record that it had a circulation in every township in the county. It is shown that it had a circulation in fifteen of the twenty townships, of a limited circulation.

It is set up in the petition that the county commissioners advertised for bids for this work, but states that there was no requirement that they should advertise for bids. It is stated in the petition that the contract about to be let will involve an expenditure of about $50, and it is stated in argument that if the printing were allowed under the legal rates to the *Sentinel* it would amount to something like $350. It does not occur to us that the amount involved cuts any figure in the case either with reference to the *Sentinel* or *Weekly Beacon*—the sole question in issue in the case being, is this a paper of general circulation in Wood county with which the county commissioners may make this contract and comply with the statute? After examining the case fully it is the judgment of a majority of the court

that it was a paper of general circulation in Wood county, and that being true, the motion to dissolve the injunction will be granted, and the petition of the Sentinel Company will be dismissed.

PARKER, J., dissenting.

I find myself unable to concur in the conclusion of my associates. We have been furnished with a transcript of the able opinion of the judge of the common pleas court who decided this case, and it seems to me that his findings, reasonings and conclusions are sound and just, and conclusive against the defendant. I shall not attempt to add much to it. With respect to the circulation, as pointed out in that opinion and as shown by the testimony of Mr. Wilkinson, of the *Weekly Beacon*, the *bona fide* circulation of the *Beacon* in Wood county as nearly as he himself can state it, at the time this suit was instituted, was 636 copies. In addition to that he states there were somewhere in the neighborhood of ninety or one hundred sold from week to week at news stands, and there were other copies that went to Toledo and elsewhere outside of the county; but he gives in his testimony in detail the number going to actual subscribers in this county. For the townships of Milton, Liberty, Henry, Jackson and Bloom lying at the south side of the county, he says the circulation was 600. Those are five of the twenty townships of the county and they lie contiguous to one another. In the other fifteen townships of the county there were sent thirty-six copies according to the testimony of Mr. Wilkinson; that is, that many copies were sent to the post offices of those townships. Perrysburg township received at the post office three; Middleton, two; Washington, two; Grand Rapids, two; Weston, three; Plain, nine; Center, eight; Freedon, three; Portage, two; Montgomery, two. No papers were sent to the post offices in Ross, Lake, Troy, Webster or Perry townships, though, as has been stated in argument, it is quite probable that some of these papers sent to adjoining townships may have gone into those townships where there appears to have been an entire dearth of circulation. But assuming that that happened, it still remains true

that in those townships having a population of 35,457 according to the census of 1900 (probably 10 per cent. greater now) the thirty-six papers sent would amount to a paper to over 1,000 residents, or to a paper to about one-tenth of one per cent. of the population of those fifteen townships.

The population of the whole county in 1900 was 51,733 and this was (and the present population is) distributed over the whole county with substantial evenness. In the other five townships, 600 papers were sent, which was a little more than one paper for each 100, or for 1 per cent. of the population. Conceding that there is enough circulation in the five townships to amount to a general circulation, I am of the opinion that there is not enough circulation in the other fifteen townships to amount to a general circulation therein. My construction of this statute as to general circulation in a county is that it means a general circulation throughout the county. By that I do not mean that the paper must go into every township in the county, but that it ought to be a substantial circulation throughout the county.

Where the population is distributed evenly, as in Wood county, the circulation in numbers sufficient to make it general, should be distributed over more than one-fourth of the territory of the county.

The report to be published and to be paid for out of the public funds is a report of expenditures made by the county commissioners during the year for all the various things for which they may have expended public funds throughout the county, and the citizenship of the county at large is interested in reading this report.

The evident purpose (if there is any legitimate purpose at all) of the publication, is to give information throughout the county as to the proceedings of the county commissioners in this regard—what they are doing and what they are spending the public money for.

It seems to me that it can not be said that a paper has a general circulation throughout the county, if this circulation is substantially limited to a certain block of townships at one end of the county comprising one-fourth in territorial extent of the

county, and where the population amounts to substantially one-fourth of the population of the county; that to make it a general circulation, at least the greater part in territorial extent of the county should be supplied with the paper in some substantial numbers. But here we have a solid unbroken territory comprising three-fourths of the townships and containing three-fourths of the population of the county with a supply of papers so meager as to amount to no circulation amongst such population and throughout such territory.

It is, of course, impossible to lay down any hard and fast rule as to the number of papers that shall go out to constitute a general circulation; it must depend upon the population and upon the distribution of the population. There may be townships containing comparatively few inhabitants where it would be right and proper to say there would be a general circulation in such townships if but few papers were there, whereas there may be townships where it would seem to be proper that there should be a greater number of papers circulated to make the circulation general. I say it is impossible to lay down any hard and fast rule upon the subject, and yet if the circulation is confined substantially to one-fourth of the population and one-fourth of the territorial extent of the county, it is my opinion that that is such a preponderance of territorial extent and population unaffected by the circulation of the paper as to make it not a paper of general circulation in the county.

If the circulation might be confined to one-fourth of the county and still be a general circulation in the county, I can not see why it might not be confined to a smaller extent of territory and a smaller population. If you circumscribe the limits to five townships, why not four townships, or three townships, or two, or even one. Why not say of some obscure paper published in some little village or cross roads in some township that has a general circulation in that township, that it is a paper of general circulation in the county?

As has been said, this is really the only question that is presented in this case. The question of the price to be paid for printing this report is not involved in this case. The question

of the wisdom or unwisdom of the policy pursued by the county commissioners with respect to this matter, is not involved in this case. The question of whether or not the county commissioners may by competitive proceedings requiring bidding, or by other proceedings, obtain or require the publication of the report at a less figure than a dollar and a half per square, is not involved in this case. The question as to whether there may or may not be some other newspaper published in the county and of general circulation therein, is not involved in this case. For aught we know there may not be a newspaper published in the county of general circulation in the county. There may not be one entitled to make this publication and receive pay for it from the public fund. We have simply this one question as to whether the *Weekly Beacon* comes within the purview of the statute as to circulation. This is a mixed question of law and fact. In all other respects it is conceded that the *Beacon* meets the requirements of the statute. That it is a newspaper of general character and that it is a political paper and printed in the county is conceded.

We find very little authority bearing directly upon this question. We were cited to one criminal case in the reports of the Supreme Court of Nebraska in which a question somewhat like this was decided, and it was there said in a foot-note by the reporter that that was the first case in which any of the higher courts had ever attempted to define "general circulation." This appears to be a mistake, for I think the precise question has been settled by the Supreme Court of Ohio in the case to which we were cited and which we have examined, viz., *Craig* v. *Fox*, 16 Ohio, 564. This case I regard as being directly in point and conclusive, and if so it is an authority not only entitled to our respect, but it is an authority absolutely binding upon this and all inferior courts.

This was a case of a publication of a legal notice in a newspaper—the Sunday *Enquirer*—made under a statute which required that the notice be published in a newspaper of general circulation in the county. The requirements, so far as this question is concerned, are precisely the same. The notice was pub-

lished in the Daily *Enquirer* and also in the Weekly and Tri-Weekly *Enquirer*. The court found the fact to be that the Daily *Enquirer* did not circulate outside of the city of Cincinnati. None of these daily papers went out into the county beyond the limits of the city. The court also found that the notice had not been published a sufficient length of time in the Tri-Weekly or Weekly *Enquirer*, so that the publication therein could be considered to supplement or assist the publication in the Daily, and the publication in the Tri-Weekly and Weekly had to be disregarded. Coming to consider the publication of the Daily, which seems to have had a sufficient circulation within the city of Cincinnati to entitle it to be regarded as of general circulation there, the court held it was not a general circulation in the county, and therefore the publication was held to be invalid.

We know as a matter of general information—a thing that courts may take judicial notice of—that the population of the city of Cincinnati, even in that early day (1847) comprised a large part or a large majority of the population of the county; yet the circulation among that population was held to be insufficient. I can not see that that case fails to meet this one. It appears to me to meet the situation exactly; and if a publication of legal notice required to be published in the county, is not sufficient where it is published in a city like Cincinnati, having a majority of the population of the county, that it ought not to be held sufficient where the publication is substantially limited to five townships in one corner of a county containing but one-fourth of the territory and one-fourth of the population of the county. That decision has stood as the law of the state since 1847. We can not find by searching authorities or digests that it has ever been qualified or criticized. The court there regarded the requirement that the publication should be a general circulation in the county as having some reference to the territorial conditions and held that the territorial idea was involved; that the circulation should be substantial throughout the county. Now, it seems to me that this statute is even clearer in support of the contention that the territorial idea as well as the population idea is involved. It is held in a number of

cases where the question was raised, that general circulation was used as contradistinguished from special circulation; that a circulation among those of a certain profession or among certain tradesmen, or members of a certain religious body, would be special, and that general means it must not be of that character, but it must be a publication that contains general news and that goes out generally to the people.

Here the requirement is that it must be a newspaper, and a political newspaper, and in addition to that, it shall have a general circulation in the county.  Now, in the same section of the statute (and I read from the old statutes—R. S., 917) upon the subject of publishing in a German newspaper, that idea appears to be emphasized—*i. e.*, the idea that the population of a territory ought to be considered in determining whether or not the paper has a general circulation (reads):

"And in addition to the publication therein required, be published in one newspaper printed in the German language and having a *bona fide* circulation of not less than 600, if there be such paper printed and in general circulation among the inhabitants speaking that language in the county," etc.  There the terms "general circulation" are used in the same section of the statute and used as it seems to me, with this idea in mind. It is not necessarily sufficient if it is a circulation of 600, it must have a circulation of not less than 600 (it does not imply that such circulation in a population of 100,000 for instance, would be sufficient) and in addition to that number it must have a general circulation.  And this 600, or whatever number the court may find, would be sufficient in point of numbers, must be a general circulation in the county.  The general code changes the phraseology somewhat, but it seems to contain and enforce the same idea.

For these reasons, I am of the opinion that the injunction ought to be made perpetual; that the *Beacon* is not a paper of general circulation within the purview of the statute.